Reese, J.
delivered the opinion of the court.
In 1817, William Hughes and Mariah Hughes his wife, were about to remove from the State of Virginia to this State. The father-in-law of Hughes, one Orsemus Winn, placed in their possession a negro boy Jack, the subject of this controversy. At that *595 time the document exhibited with the bill, was executed by Winn. As to that document two considerations arise, first, is it before us as evidence? secondly, what is its legal operation? It is not admitted in the answer, yet it is not strongly put in issue. And William Hughes, a witness in the cause says, that upon the names of the witnesses being read to him, he remembers that he signed the paper; he was ignorant however of its contents. The paper is recorded in the county of Lunenburgh, Va., and the clerk of. that county, not giving a copy of the record of probate, certifies that it was duly proved according to law. This probate, before our registration act of 1839-40, would have been held insufficient. It is good by the terms of that statute. But it is said that a certificate of probate, which before that statute could not have been registered, cannot now be received; that to permit it, would give to the act an operation violative of the constitution. To this proposition we are unable to yield our assent. Registration laws are founded Upon reasons of public policy. By them it is intended that certain instruments, evidencing a transfer of property shall be made known and be subject to public inspection, and also, that the proof of their existence shall be perpetuated. The solemnities of their execution and authentication, may be as many, or as few, and of that precise character, which the legislature may prescribe. The subject is within their competency. And whether their provisions relate to the future or the past, they affect the remedy and not the right.
Upon this ground then, if it were necessary to resort to it, we think the instrument in question is before us in evidence? 2nd. What is its legal effect? The instrument is most inartificially drawn. It states, that “the said O. Winn doth hereby deliver to the said William and Mariah his wife, one negro boy named Jack, on the following conditions, namely, that the said negro remain in the personal possession of the said Wm. Hughes and Mariah his wife, not subject to the payment of any debt of the said Wm. Hughes or Mariah, nor to be taken by any contract of said Wm. Hughes, of what nature or kind soever; and if the aforesaid Mariah shall die leaving no heir or heirs of her body, then the said negro shall be returned to the said O. Winn and his heirs, and in case the said Mariah shall die, leaving an heir or heirs of her body, and the said heir or heirs, shall die before they come to the age of twenty-one, and in case they leave no heir of their body, then the said negro *596 shall be returned to the saidO. Winn or his heirs. “But in cash the said Mariah shall have a child or children and die leaving said child or children surviving after herdeath, and her child or children should have heirs of their body or arrive to the age of twenty-one years, then I, the said O. Winn, doth lend to the said Wm.- Hughes and Mariah his wife, the said negro during the natural life of the said Mariah, and after the death of the said Mariah-, I, the said O. Winn, do give and bequeath to the said child or children of the said Mariah, (if any of them should arrive to the age of twenty-one years of age, or leave heirs of their body) the aforesaid negro to have and to hold forever.”
Stripping this document of the clauses inserted with stich solicitude by the grantor to create a reversion in himself, and it imports that Winn had delivered and loaned to Hughes and wife, the negro to be and remain in their service, for and during the natural life of the wife, and that then and after the death of the' wife, that he gave him to such child or children of hers surviving at the time of the death of the wife as might have attáined or might attain the age of twenty-one years, &c.
The very statement shows that it does not fall within the rule of Shelly’s case. The general intent is not to limit the reversion even upon an indefinite failure of issue. The particular intent is to give to the first taker only a life estate; this is manifested by the terms “deliver” and “lend” for her natural life. The remainder is given by different terms, and as a separate, and as it were, independent donation to the child or children of the wife surviving at her death. These are the very terms appropriate to exclude a case from the operation of the rule in Shelly’s case. The remainder is vested in the child or children, living at the death of the wife, contingent, however, upon their arrival at the age of twenty-one years, or if dying, before that time, upon their leaving children then surviving.
In the case before the court, the tenant for life, had one child born, the complainant, and he reached the age of twenty-one before the termination of the life estate.
As to whether a limitation in remainder of a personal chattel, can take effect, it is not an open question.
It is now, in despite of contrary opinions early entertained, á well settled point that such limitation is good. As to the other question,-relating to the nonregistration of the deed in this State, *597 the ease of Morgan and Elam, and the case determined at the present term of Baldwin vs. Baldwin, and other cases and decisions, settle, that in Virginia as well as in this State, under the statutes applying to this instrument, the want of registration avoids the deed- as to creditors of, and the purchasers from, the grantor only. Upon the whole case we are of opinion, that the decree of the chancellor ought to be affirmed.